969 So.2d 516 (2007)
Osinachi NWOSU, a minor, by and through her father and next friend, Musa IBRAHIM, Appellant,
v.
Moshe ADLER, M.D., Pediatric Associates, P.A., Kelson Physician Partners, Inc., Kelson Physician Partners of S.E. Florida, Inc., and Roseline Zephirin, Appellees.
No. 4D07-686.
District Court of Appeal of Florida, Fourth District.
November 21, 2007.
Law Offices of William C. Ruggiero, Ft. Lauderdale; Law Offices of Jeffrey H. Wolfson, Ft. Lauderdale; Alters, Boldt, Brown, Rash & Culmo, P.A., and Kimberly L. Boldt, and Beth Vogelsang, Boca Raton, for appellant.
Adams, Coogler, Watson, Merkel, Barry & Kellner, P.A., and Jodi G. Barrett, and Peter A. Cooke, West Palm Beach, for appellees.
Before GREEN, CORTIÑAS, and SALTER, Associate Judges.
GREEN, J.
Osinachi Nwosu appeals an order dismissing her medical malpractice complaint with prejudice. The trial court found that the National Childhood Vaccine Injury Compensation Act ("Vaccine Act" or "Act"), 42 U.S.C. §§ 300aa-1 to -34 (2007), barred the action in state court. We reverse based upon our conclusion that this cause of action does not come within the purview of the Act.
According to well-pled allegations of the complaint, Nwosu, who was one-and-a-half years old at the time of the incident, visited her pediatrician for treatment. This treatment included the administration of certain immunizations. The doctor negligently injected the needle into her buttocks causing nerve damage to the sciatic nerve and leading to permanent injury to her leg.
Nwosu's father filed a medical malpractice action against Nwosu's treating physician and employer. The complaint alleged that the defendants had negligently administered the DT, DTP and DtaP 4 vaccines to the infant, causing damage to her leg. Defendants' motion to dismiss the complaint, for failure to follow the administrative procedures in the Vaccine Act, was granted. An Amended Complaint was also dismissed on this basis.
Nwosu filed a Second Amended Complaint omitting any reference to the vaccination. Instead, the Second Amended *518 Complaint alleged that the plaintiff sought medical care and treatment from the defendants, "which included injections," and that defendants "failed to provide [Nwosu] with the appropriate medical care and treatment by injecting the plaintiff and hitting a nerve in her leg." The defendants' motion to dismiss this complaint on the same basis was granted and the complaint was dismissed with prejudice. Nwosu filed the instant appeal.
The issue in this appeal is whether the Second Amended Complaint presents a "vaccine-related injury" as defined in the Vaccine Act, 42 U.S.C. § 300aa-33(5), which would bar the plaintiff's action in state court. We hold that it does not, and reverse the order dismissing the complaint.
Under the Vaccine Act, all persons having a vaccine-related injury or death associated with the administration of a vaccine are required to file a claim with the United States Court of Federal Claims. 42 U.S.C. §§ 300aa-11(a)(1), -11(a)(2)(A), -12(a) (2007); Shalala v. Whitecotton, 514 U.S. 268, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995). The recovery scheme created by the Act is intended to work faster and with greater ease than the traditional civil tort system. Shalala, 514 U.S. 268, 115 S.Ct. 1477, 131 L.Ed.2d 374. Administrative remedies under the Act must be exhausted prior to bringing a civil action in state court. Aull v. Sec'y, Dep't. of Health & Human Servs., 65 Fed.Cl. 400 (2005). These claims, however, are limited to "vaccine-related injuries." The issue in our case turns on whether, as alleged in Nwosu's Second Amended Complaint, Nwosu suffered such an injury as contemplated under the Act.[1] In deciding this issue, we are required to apply federal law. Shadie v. Aventis Pasteur Inc., 254 F.Supp.2d 509, 517 (M.D.Pa.2003) (citing Demos v. Aventis Pasteur, No. 01-04504-CIV, slip op. at 16 (S.D.Fla. Mar. 21, 2002)).
The Vaccine Act itself defines "vaccine related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table[.]"[2] 42 U.S.C. § 300aa-33(5) (2007). There is no doubt that the vaccine administered to Nwosu is listed in the Vaccine Injury Table. 42 U.S.C. § 300aa-14(a)I (2007). However, it is equally clear that she is not suing for a harm listed in that table. The question then becomes whether the type of harm she suffered, as alleged in her Second Amended Complaint, is the type of harm contemplated by the Act for which the Act requires Nwosu to file her claim in the Court of Federal Claims. A review of the federal caselaw addressing the issue demonstrates that she did not.
The defendants admit that Nwosu has suffered neurological injury, and admit that the Second Amended Complaint does not reference the type of inoculant contained in the vaccination Nwosu received. It is apparent that the gravamen of the cause of action is not the liquid contained in the vaccine, but rather the method by which the needle was inserted.[3]
*519 Federal courts have held that for a plaintiff's action to fall within the ambit of the Act, the vaccination must be a substantial factor causing the harm. Shyface v. Sec'y of Health & Human Servs., 165 F.3d 1344, 1352 (Fed.Cir.1999)(undisputed facts show DPT vaccination was a substantial factor contributing to death). The injury must flow from the administered inoculant contained in the injection.
In Amendola v. Sec'y, Dep't. of Health & Human Servs., 989 F.2d 1180, 1186-87 (Fed.Cir.1993), the court examined the meaning of "vaccine-related" injury and determined that "a situation in which the direct cause of the injury was a contaminated needle, or the doctor's negligent dropping of an infant patient, or other negligence facially unrelated to the vaccine's effects," did not present a vaccine-related injury that would compel the claimant to proceed under the Act. Amendola explained that "if the negligent action of the doctor which caused the injury was not vaccine-related, then there would be no eligibility for compensation under the Act as a result of that injury." Id. at 1187 n. 8.
Examining the Amendola court's warning that unrelated vaccine injuries do not fall under the Act, the court in Aull v. Sec'y of Health & Human Servs., 65 Fed. Cl. 400 (2005), determined that such a conclusion fostered the purpose of the Act. Permitting a civil action against a physician for improper placement of a vaccination "in no way jeopardizes the continued supply of the vaccine or the willingness of doctors to administer a vaccine. Even a suit for negligence directly associated with administration of the vaccine, e.g., using a contaminated needle, could nevertheless proceed without offense to the Act because the negligence is `facially unrelated to the vaccine's effects.'" Aull, 65 Fed.Cl. at 405 (citing Amendola, 989 F.2d at 1186-87).
We conclude that based upon the reasoning in Amendola and Aull, the claims raised in Nwosu's Second Amended Complaint are not associated with the physical effects of the vaccine, as that noun is used in the Act. It is true that had the child not been vaccinated, she would not have been injured. However, her injury as alleged, does not flow from the inoculant injected into her body  it is not the type of injury covered under the Act. Amendola, 989 F.2d 1180; Aull, 65 Fed.Cl. 400. Hence, the Act does not bar her action in state court, and the order dismissing the Second Amended Complaint must be reversed.
Based on the foregoing, we reverse the order dismissing Nwosu's complaint with prejudice and remand with instructions to reinstate same.
Reversed and remanded.
NOTES
[1] In reviewing an order granting a motion to dismiss a complaint, we are constrained by consideration only of the facts within the "four corners of the complaint." Chodorow v. Porto Vita, Ltd., 954 So.2d 1240, 1242 (Fla. 3d DCA 2007).
[2] The Act contemplates several exceptions for adulterants or contaminants added to the vaccine, 42 U.S.C. § 300aa-33(5) (2007), but this is not an issue in this case.
[3] In fact, vaccine, a noun, is defined as a preparation of killed microorganisms that is administered to produce or artificially increase immunity to a particular disease. Webster's Third New International Dictionary 2527 (1986). The definition does not address the method by which the inoculant is administered.